FRED I. JANSONS AND MARA JANSONS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jansons v. Commissioner
Docket No. 22394-87
United States Tax Court
T.C. Memo 1990-54; 1990 Tax Ct. Memo LEXIS 54; 58 T.C.M. (CCH) 1327; T.C.M. (RIA) 90054; February 7, 1990
Catherine R. Chastanet, for the respondent. COLVIN
MEMORANDUM OPINION COLVIN, Judge: This matter is before the Court on respondent's Motion for Summary Judgment under Rule 121. [1]
Respondent determined a deficiency in petitioners' income tax for 1980 in the amount of $ 6,883.22, and an addition to tax pursuant to section 6653(b) in the amount of $ 3,441.61. Petitioners resided in New York, New York, at the time they filed their petition in this case. On June 7, 1989, we issued a Memorandum Opinion in this case ( Jansons v. Commissioner, T.C. Memo. 1989-274). That case held *55 that petitioners had failed properly to prosecute, and pursuant to Rule 123(b), the Court dismissed that part of the case relating to petitioners' income tax deficiency. However, because respondent had failed to set forth sufficient facts in its pleadings to support a finding of fraud, see Smith v. Commissioner, 91 T.C. 1049, 1058 (1988), the Court did not dismiss that part of the case relating to the addition to tax for fraud. In so holding, the Court also noted that facts sufficient to establish fraud had not been established by deemed admissions or deemed stipulations. On July 14, 1989, respondent served a Request for Admissions on petitioner at 51 E. 42nd Street, Suite 417, New York, New York 10017, and on Allan R. Levine, Esq., at 600 Third Avenue, 39th Floor, New York, New York 10016. The 42nd Street address had been used by petitioners in their February 4, 1988, reply to this Court's January 5, 1988, order to advise the Court of their correct address for service in this case. Petitioners failed to appear at trial during the Court's February 21, 1989, trial session in Westbury, New York, and failed to obey an order of this Court to provide an address *56 where they could be reached. Subsequently, respondent was informed that petitioners were residing at 278 Blue Street East, Toronto, Ontario, Canada, M4W3M4, and served a copy of his Motion for Summary Judgment on petitioners at their Canada address. Respondent's request for admissions included the following: 1. Since the late 1960's, Fred Jansons has been in the construction business as a taping subcontractor. 2. From the late 1960's until 1978, Fred Jansons conducted business through a number of corporate entities including Decca Contracting, Adria Painting, Action Interior, Rene Painting, All Tape Contractors, and Rene Management. 3. In 1978, these entities ceased to exist when Fred Jansons formed J. Interiors, Inc. 4. Fred Jansons was president of J. Interiors, Inc. 5. Mara Jansons was the Secretary-Treasurer of J. Interiors, Inc. 6. From 1979 through 1983, inclusive, Fred Jansons and Mara Jansons used the bank accounts of these now defunct corporations, namely, All Tape Contractors, Rene Paining, Decca Contracting and Action Interiors to launder corporate checks of various building contractors throughout New York City. 7. Respondent has determined petitioners' *57 correct adjusted gross income in 1980 and years subsequent by use of information obtained by respondent's Criminal Investigation Division from a confidential informant known to be reliable to a state prosecutor's office. 8. The confidential informant upon whose personal knowledge respondent relies is a principal of a New York City contractor (hereinafter "the Contractor") which used petitioners' cash laundering services. 9. Respondent has determined petitioners' corrected adjusted gross income for the taxable year 1980 on the basis of the specific item method. 10. In the mid 1970's, Fred Jansons was doing legitimate subcontracting work, primarily taping and spackling work for this Contractor. 11. In the mid 1970's, Fred Jansons spoke to one of the principals of a building contractor who was doing business in Queens, New York and proposed to have the Contractor buy cash from the Jansons for a fee. 12. In or about 1977, Fred Jansons offered to provide the Contractor cash to pay its employees overtime wages off the books. 13. Fred Jansons explained to the Contractor that he would cash the Contractor's corporate checks for a fee representing ten percent of the cash delivered. *58 14. From in or about 1979 to in or about 1983, Mara Jansons spoke on numerous occasions with one of the principals of the Contractor and arranged for the payment and delivery of cash in exchange for a ten percent commission. 15. In most instances, Fred Jansons personally delivered the cash to the Contractor. 16. During this time period, Mara Jansons was the bookkeeper for J. Interiors, Inc., and therefore was aware of the legitimate contracting work that J. Interiors, Inc. was performing. 17. The deliveries of cash made to the Contractor by Fred Jansons were usually made on a weekly basis. 18. The total amount of cash delivered to the Contractor over the 3-year period 1981 through 1983 was approximately $ 1,300,000. 19. The Jansons also delivered significant amounts of cash to the Contractor in the calendar year 1980 for a ten percent commission. 20. To the knowledge of Fred and Mara Jansons, the Contractor used this cash to pay its employees off the books and without the withholding of taxes. 21. Fred Jansons also provided to the Contractor false or blank invoices for each of the checks cashed so that the Contractor could fraudulently claim the checks as business *59 expenses. 22. In each of the years 1980, 1981, 1982 and 1983 Fred Jansons provided cash in substantial amounts to the Contractor for a ten percent fee. 23. The amounts of cash provided to the Contractor for which Fred and Mara Jansons received a ten percent commission were as follows: 1981 1982 1983
$ 373,961
$ 372,394
$ 585,878
24. Petitioners earned at least $ 10,216 from their cash laundering business in calendar year 1980. 25. Petitioners participated in a conspiracy with various contractors to defeat the lawful governmental functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of the revenue, specifically, income taxes and Federal Insurance Contribution Act ("F.I.C.A.") taxes due and owing the United States. 26. On or before April 15, 1981, Fred and Mara Jansons signed a joint United States Individual Income Tax Return for calendar year 1980 which was subsequently filed with the Internal Revenue Service. * * * 28. Petitioners fraudulently and with intent to evade tax failed to report on their 1980 * * * income tax returns the amounts of income they earned from their business of laundering *60 cash. 29. Petitioners reported their 1980 taxable income to be $ 29,499 when they well knew and believed that their true joint taxable income was substantially in excess of the amount reported. * * * 31. Petitioners fraudulently and with intent to evade income taxes failed to report the income earned from their business of providing cash for a ten percent fee to various contractors in the New York City area during 1980 * * *. 32. Petitioners failed to maintain, or to submit for examination by respondent, complete and adequate books and accounts of their income producing activities for taxable years 1980 * * * as required by the applicable provisions of the Internal Revenue Code of 1954 and the regulations promulgated thereunder. 33. Petitioners' failure to maintain complete and accurate records of their income producing activities and their failure to produce complete and accurate records to respondent in connection with the examination of petitioners' income tax returns for taxable years 1980 * * * was fraudulent with intent to evade tax. 34. In 1980, petitioners received $ 7,226 in dividends which they failed to report on their 1980 income tax return. Through petitioners' *61 failure to report such dividend income they fraudulently understated their taxable income in that year with the intent to evade the payment of taxes on such income. 35. Petitioners fraudulently and with intent to evade tax omitted from their income tax returns for taxable years 1980 * * * amounts of income as follows: 1980
$ 17,442 * * * 36. A part of the underpayment of tax required to be shown on petitioners' returns for each of the taxable years 1980 * * * is due to fraud. 37. Petitioners' fraudulent omission of specific items of income from their 1980 income tax return is part of a * * * pattern of intent to evade taxes. 38. In a complaint filed in United States District Court for the Southern District of New York in April 1988, each petitioner was charged with one count of willfully conspiring to defraud the United States by defeating the lawful governmental functions of the Internal Revenue Service (18 U.S.C. 371) and one count of Federal tax evasion (26 U.S.C. 7201). 39. At or about the time of the filing of the criminal complaint with the United States District Court for the Southern District of *62 New York, petitioners fled the United States to avoid arrest pursuant to the issuance of arrest warrants on April 5, 1988. 40. Petitioners are fugitives from justice, and as such, have refused to cooperate with the Internal Revenue Service or its agents in the examination of their federal income tax liabilities. We have deleted some material relating to years not before the Court in this case. As of November 2, 1989, petitioners had not responded to the request for admissions. Therefore, respondent's request for admissions stands undenied by petitioners and is deemed admitted pursuant to Rule 90(c). Fraud may be inferred by any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court, or where an entire course of conduct establishes the necessary intent. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. a Memorandum Opinion of this Court; Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stone v. Commissioner, 56 T.C. 213 (1971). *63 Fraud may be established through facts deemed admitted under Rule 90(c). Marshall v. Commissioner, 85 T.C. 267, 273 (1985). The facts establish that petitioners failed to report dividends and the income earned from their money laundering business, failed to maintain complete and adequate books and records of their income producing activities, and participated in a conspiracy with various contractors to defeat the lawful assessment and collection of revenue by the Internal Revenue Service. Based on the record in this case, respondent has clearly and convincingly proven fraud. Upon filing of respondent's motion for summary judgment, the Court ordered petitioner to file any objections within 30 days. The Court's order was served on petitioner at the following addresses: 51 East 42nd Street, Suite 417, New York, New York 10017; Allan R. Levine, Esq., 600 3rd Avenue, 39th Floor, New York, New York 10016; and 278 Blue Street East, Toronto, Ontario, Canada M4W3M4. Petitioners did not file an objection to Respondent's Motion for Summary Judgment. Accordingly, respondent's Motion for Summary Judgment is granted. An appropriate order will be entered. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code, as amended and as in effect for the year at issue.↩