T.C. Memo. 2002-77

UNITED STATES TAX COURT

ZACHARIA HADRI AND RAWA HADRI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4954-00.                    Filed March 27, 2002.

Zacharia Hadri and Rawa Hadri, pro sese.

<u>Kelley A. Blaine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a deficiency in income
tax and a fraud penalty for petitioners' 1993 tax year as
follows:

| Year | Deficiency | Penalty Sec. 6663(a)[1] |
|------|-----------|-------------------------|
| 1993 | $103,559  | $77,668.50              |

---

[1] All section references are to the Internal Revenue Code as
amended and in effect for the year under consideration, and all
Rule references are to this Court's Rules of Practice and
Procedure, unless otherwise indicated.

Respondent amended his answer to assert an increased deficiency and an increased penalty for fraud.  Subsequently, respondent, having received additional information, conceded a portion of the increase.[2]  Remaining in dispute are a $157,822 income tax deficiency and a $118,365.75 section 6663(a) penalty.

FINDINGS OF FACT

At the time the petition was filed, petitioners resided in Anaheim, California.  For taxable year 1993, petitioners conducted five separate income-producing business activities as follows:  Harrington Automotive (Automotive), Harrington Rentals (Rentals), Harrington Auto Sales (Auto Sales), Sports Card Connection (Card Connection), and Pacific Seed & Feed (Seed & Feed).  For 1993, petitioners disclosed Automotive and Rentals on their Federal income tax return, but concealed Auto Sales, Card Connection, and Seed & Feed.  Petitioners reported $177,360 in Schedule C, Profit or Loss From Business, gross receipts for Automotive, $17,133 in Schedule E, Supplemental Income and Loss, income for Rentals, and $84 in interest income.

Through information obtained from the Bank of America,

---

[2] In an amendment to answer, respondent asserted a $155,687 increase in petitioners' unreported income for a total unreported income of $562,033.  Subsequent to the amendment to answer respondent received information from petitioners which indicated that $18,661 in deposits to one bank account were nontaxable.  On the basis of this information, respondent reduced the unreported income amount to $543,372.  Respondent also disallowed a net operating loss of $51,520.

respondent discovered petitioners' bank loan application and a version of petitioners' 1993 Federal income tax return which had not been filed with respondent.  On this return, as opposed to the one filed with respondent, petitioners reflected $247,000 in Schedule C gross receipts.  In related financial information, petitioners reflected business income from Card Connection and Seed & Feed.  In an attempt to explain the inconsistent returns, petitioners told respondent the return given to the Bank of America in connection with the loan application was a "phony".

Despite petitioners' effort to conceal their other activities, respondent discovered Auto Sales through petitioners' sales tax returns for the 1993 taxable year.  Petitioners had not only failed to report their Auto Sales activity to respondent but also concealed its existence from their representative.  From discovering Auto Sales, respondent also discovered a previously undisclosed bank account.  It was only after these discoveries that petitioners admitted to Auto Sales's existence.  In so doing, however, petitioners claimed that they did not report Auto Sales's gross receipts because it sustained a loss.

Moreover, despite respondent's requests, petitioners failed to produce statements or records for Auto Sales.  Respondent ultimately obtained  both by means of a summons.  However, because petitioners' records were incomplete and poorly maintained,  respondent had to reconstruct Auto Sales's financial

records by using the bank statements and the little information available on petitioners' records. After allowing $114,657 in previously unclaimed expenses in connection with Auto Sales, respondent determined that Auto Sales had generated a profit for its taxable year 1993.

Following the discovery of Auto Sales and its corresponding bank account, respondent independently discovered a second undisclosed bank account. Altogether, respondent's reconstruction of petitioners' income resulted in taxable deposits of $737,949 for 1993. This net taxable amount is $543,372 greater than the amount of income reported by petitioners.

In a statutory notice of deficiency, respondent determined a $103,559 income tax deficiency and a $77,668.50 fraud penalty under section 6663. After the filing of a timely petition, respondent filed an answer and an amendment to the answer. Respondent, by amendment to answer, sought an increased income tax deficiency of $165,211 and an increased fraud penalty of $123,907.50. After petitioners failed to communicate with him or reply to the amendment, respondent filed a motion for entry of order that undenied allegations be deemed admitted for both the answer and the amendment to the answer. These motions were granted.

After making a small concession and decreasing petitioners'

income tax deficiency and fraud penalty to $118,365.75 and $157,822, respectively, respondent sent petitioners a proposed stipulation of facts and discovery requests. Petitioners did not respond, and the proposed stipulation of facts was deemed established under Rule 91(f). The Court granted respondent's motions to compel with respect to the discovery requests and issued an Order limiting petitioners' ability to put on evidence with respect to matters sought by means of the discovery requests.

Petitioners failed to appear at the October 15, 2001, Los Angeles, California, trial session.

OPINION

While petitioners must show that respondent erred in determining the income tax deficiency of $103,559, respondent must prove the increased deficiency of $54,263.[3] See Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 889-891 (1981); Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 856 (1957). We find petitioners have not shown that respondent erred in his initial determination, and respondent has proven that the increased deficiency is correct.

At the onset, we note that respondent's proposed stipulation

---

[3] This amount is the excess of the $157,822 increased deficiency over the $103,559 deficiency determined in the statutory notice of deficiency.

of facts was deemed established under a Rule 91(f) motion, and accordingly we have based most of our fact findings on these established facts. In addition to this, respondent reconstructed petitioners' income from a bank deposit analysis. This analysis was made from petitioners' bank accounts, Forms 1040, California sales tax returns, financial statements relating to the Bank of America loan application, and other materials provided by petitioners. This reconstruction resulted in the following net taxable deposits:

| Account | Total Deposit | Non-Taxable Amount | Net Taxable Deposit |
|---|---|---|---|
| Wells Fargo | $215,586 | $192.00 | $215,394.00 |
| Bank of America (I) | 298,220 | -0- | 298,220.00 |
| Bank of America (II) | 182,345 | 5,358.00 | 176,987.00 |
| Bank of America (III) | 30,034 | 20,545.78 | 9,488.22 |
| Security Pacific (I) | 4,744 | -0- | 4,744.00 |
| Security Pacific (II) | 41,616 | 8,500.00 | 33,116.00 |
| Net taxable deposit | | | $737,949.22 |

Based on the reconstruction, we hold that respondent has shown petitioners are liable for the increased deficiency.

We now consider whether respondent has shown that petitioners' understatement of income was fraudulent. Fraud must be shown by clear and convincing evidence. Section 6663 provides that if any part of an underpayment of tax is due to fraud, an

amount equal to 75 percent of the underpayment which is attributable to fraud shall be added to the tax. While respondent ultimately has the burden of proving fraud, it can seldom be shown by direct proof of the taxpayer's intention. Spies v. United States, 317 U.S. 492, 499 (1943). However, fraud can be established by circumstantial evidence and by reasonable inferences drawn from the taxpayer's entire course of conduct. Id. Such inferences may be drawn from the so-called badges of fraud including, but not limited to, understated or unreported income, inadequate records, intentional concealment of income and assets, and failure to cooperate with taxing authorities. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

Based on the evidence, including the facts established under Rule 91(f) and the evidence at trial, we find that petitioners intended to conceal, mislead, or otherwise prevent the collection of their taxes. Petitioners failed to report a substantial amount of income. Petitioners concealed two bank accounts with $513,614 in taxable deposits from their own representative and respondent. Petitioners kept and maintained inadequate records which did not reflect all income or expenses. Petitioners concealed a substantial business activity from their own representative and from respondent. In an attempt to explain this concealment, petitioners claimed that the activity had

produced a loss; however, respondent's reconstructions revealed that the activity had, in fact, produced a profit.

We accordingly hold that respondent has shown by clear and convincing evidence that petitioners' understatement of income was fraudulent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.